Good morning, Your Honors. May it please the Court, Brian Walter on behalf of Defendant and Appellant, City of Los Angeles. There are three issues that I'd like to raise with you, the first of which is a procedural issue, and that is the City's ability to appeal the final judgment that was in its favor in this case. And the reason that the City did appeal, and the reason that the City Police has standing and the ability to appeal, is that the factual findings and legal findings that the District Court made on the issue of compensability of the assigned adoption of a safety gear for the plaintiff can have collateral and stockpile effect. I would like to ask initially, doesn't Littlejohn articulate a reason that responds to your inquiry, the case Littlejohn? Well, it does to an extent, but I think there still is, I mean, the issue would be whether the findings on donning and adopting a protective gear were necessarily determined in the underlying trial court decision. And if they are, I think under the Rubalcalba case, the City would still have standing to appeal. Couldn't it be suggested that the ruling of the trial judge was simply dicta? It could. It could. But it also could be suggested that the trial judge's ruling was, the judgment was based on the fact that the plaintiff did not prove there was any work period in which he worked over 171 hours in a 28-day FLSA law enforcement work period. And in order to come up with a calculation of whether or not the plaintiff worked over 171 hours, the District Court had to go through the analysis of what are different compensable activities that the plaintiff may have performed. And donning and adopting a safety gear was one of those activities. With respect to the two matters that he addressed, were they necessary to the judgment? Well, as I was indicating, I think that the issue of the safety gear, it was not, I suppose, directly necessary to the judgment, but it was part of the judgment. I think it's difficult to separate that out from a determination that the plaintiff didn't go over 171 hours in a 28-day period. And moving on to the next two issues, which are substantive issues. Alex, I have a question for you on that last issue, if I may. Did the judge indicate that he had counted the, or not counted, putting on the safety gear when he made his 171-hour time? Well, Your Honor, he did not specifically indicate in his ruling that he did calculate. I believe the ruling indicates the plaintiff did not offer sufficient evidence to establish he went over, he worked over 171 hours without compensation at any time. And that was the basis of the court's ruling. Our belief and concern is that the court did, in fact, make some type of calculation or analysis to come up with that finding. It really, though, is not clear, I think, from the district court's final thought report and judgment. See, if it's not clear, then aren't you in a situation where you can't say it was necessarily decided? Well, pretend. Oh, yeah, it was dismissed. Well, I think if the court is of the conviction that that issue was not necessarily decided, then yes, the appeal would have to be dismissed. But I think there is an argument, and it's certainly been made by the plaintiffs in the lower court cases, there's four other cases of similar nature currently pending in district court in my client's city of Los Angeles, and plaintiffs in all four cases have made a flat or soft argument. Has that argument been successful? It has not to this point. None of those cases have been reduced to a final judgment yet, but it has not been successful so far. But, no, I do agree that if the court is of the conviction that it was not necessarily that issue, the compensability and safety deal was not necessarily determined by Dead Flu's order and finding, then there's no basis for our appeal. And moving on to the substance of the merits, there are two specific errors that the city appeals from. And in particular, the court first made the determination that the non-adopting of safety or protective gear is a contemptible activity. And in doing so, the court examined a line of state's law that really started with the enactment of the Portal Act of 1947 which excluded preliminary and post-preliminary activities from compensation. Since that time, the Department of Labor has issued a regulation to fill in the gap that was left by Congress because Congress never defined exactly what work is in the DFLSA. And the Department of Labor, in implementing and interpreting the DFLSA, has indicated that in Regulation 29 CFR 7.8, that if a design and adopting of clothing or gear can be done off the premises of the employer, it is not compensable. In this particular case, although the court appeared to fire or indicated it was upon that standard, which has been a long-standing standard for decades, the court found that in this case because the nature of the work required adopting safety gear on the premises, that it was compensable. The reason that was error for the court to do that was both legal and factual. The legal error there is that there was extensive evidence presented at the trial that officers, including the plaintiff, had gone and adopted safety gear off of the premises of the employer. In other words, they had gone and adopted gear which, in this case, is still relative to a ballistic or bulletproof vest and a belt that contains the various items of equipment, such as the gun, handcuffs, and ammunition that a patrol officer wears on a daily basis. And the court determined that the nature of the work required donning on the premises, even though there was extensive testimony by officers that they had, in fact, gone and adopted gear off the premises. So what's your argument? What's your position regarding what the ruling should be, that if there's the option to don and adopt at home, it necessarily falls outside the compensable realm of work? Yes, and certainly in this case in particular. Do you rely on the Department of Labor memo, or do you rely on a case for your position? Well, both. The Department of Labor advisory memorandum from 2006, 798, and then in uncertain cases the Ballaras case and the Alcor case both reference the Department of Labor regulations. So do you rely on those cases solely because they incorporate the reasoning of the memo? Not solely, but largely. They also incorporate the reasoning of the Steiner Supreme Court case from 1956. And what in that case do you think supports your argument? Well, I think in all three of those cases, Steiner, Ballaras, and Alvarez, the employees were required to don the safety gear on the premises. They had no other option. There was no other realistic option, and there is another option in this case. And then I would like to just lastly mention on the other ground or field, is that the court issued a ruling that, among other things, said that two to three minutes, even if it only takes the option, in this case two to three minutes, which we believe as we demonstrated in our brief, is what the evidence presented it for, that two to three minutes to don safety gear is not the minimum amount. And in the Lindau case and the Lindau factors, when you look at each of the four factors, that was terrible. And I will reserve the time. All right. Thank you. You don't have any time. We'll give you a minute or two, though. Good morning, Your Honors. HRL, I mispronounced Greg. Common pronunciation. Common pronunciation. My father's dad died before he got a chance to explain. Counsel, did you file a motion to dismiss before this Court? I did not. And I understand that this was going to be an issue on the hearing. It's a jurisdictional issue, so there is no discretion. And the Court's discretion to hear it or not, yes. I'm hoping the Court hears it because it has some effects, clearly, in the Ninth Circuit and in a number of cases that we have. To be honest with you with the Court, I know the argument is that it's going to be res judicata or that it would be argued res judicata, this decision, and that other district courts may follow. Do you represent the plaintiffs in those other cases that were referenced? In a number of them, I do. And did you make the argument that the decision was res judicata? We did. And as I'm going to point out to the Court, I think every court has indicated that it's not. But at least you were convinced that there was some res judicata effect, right? We did make the argument most recently in Allie's and Nolan's case that Judge Fee's sitting down there with Judge Liu heard, and we asked the Court to take official notice of that ruling, which I think is a very significant ruling because in that ruling, he's found that one, it wasn't res judicata, but two, not only the detective here, but the uniform itself is a compensable dog-eating, dog-eating activity as well. Counsel, what I'm worried about in terms of your position is that, you know, if it's not collateral assault and the city is a prevailing part, and it seems to me that even though it's a fascinating issue and the district courts are somewhat in disarray, you know, can we address it? Well, let me say that I think you can. Congress, the Congress can look at issues they think are, you know, of interest to them. But usually we can only look at something if we have Article III jurisdiction. So we, you know, we rarely have an appeal by the prevailing party that we can look at. And I thought the only hook here that would permit it is if there's an ancillary finding that has collateral estoppel effect. But as I read Judge Liu's opinion, you know, he's saying it's sort of irrelevant because of the time limits. Yeah, he did indicate that the time calculated would not go over the gap, which is that 13-hour window that is uncompensated. He did indicate that. Of course, you know, everything is still subject to appeal. The court's rulings down there interrupt. They're all subject to being revised or be done. So technically they're not finished. So those cases could change. Their ruling's on appeal. But can't we just look at what the district court said and apply the rules of collateral estoppel and make our own decision whether there is a collateral estoppel effect? Can this court independently review it? Yes, it can, is my opinion. Don't we have to review it as part of our duty to see if we have jurisdiction? You do. I wish I could answer something different. But, yeah, it's almost like a de novo review in regards to the jurisdiction. You have to read the effect. And if we decide that it wasn't necessarily determined, then don't we have to dismiss? Yes. Isn't that the whole issue? That is. That is. But I know there's another case. I'm up here in an interesting posture because there's another case coming after me, the Brumanti case, that deals with a lot of the same issues. And so if I could, I would please the court to address just a couple of those in light of Montiel, in case we do find jurisdiction up here. A few things that weren't in the briefs that I think are very important. The city raises the issue that location is so important, but that's the end all, relies on the labor's memo and indicates that the case law supports this position. But I beg to differ. For instance, in Steinem, it's not quoted in the briefs, but which is, I think, very important to this court. It's in the captioning of the Supreme Court where they gave a legislative history where they quoted the senators as to what was going to be compensable and what was not going to be compensable. Senator Cooper asked this, and it's part of the opinion. I'm very happy that the senators asked the question because I believe it gives the opportunity of drawing a fine distinction between the type of activity which we consider compensable and the type which should not be compensable. In accordance with our intention as to the definition of principal activity, and here's the important part, if the employee could not perform this activity without putting on certain clothes, then the time used in changing into those clothes would be compensable as part of this principal activity. On the other hand, if changing clothes were merely a convenience to the employee and not related to the specific work, it would not be compensable. That's the Supreme Court quoting the legislative history. I think it would be very difficult for the city or anyone else to argue that wearing a police uniform and a protective gear is necessary for their duties, that it's not just a mere convenience. And I can refer to you, which I think is an important reading point for you, is Judge Feig's ruling on pages basically 23 and 24, where he indicates, for instance, in California, our own California state laws require, for instance, Penal Code 8830.10, require an officer to display this badge, that he get permission to wear his uniform anywhere else. He's out in the public and he's not on duty. He states, a more important example is the rule that a suspect may not be prosecuted for evading or pursuing his officer while operating in the limited scope unless the officer is, among other things, wearing a distinctive uniform, not just a protective gear or uniform. Counsel, what do you make of the observation by the city's attorney that officers are given the option to doff and don at home or don and doff at home? They are ‑‑ it's kind of an illusory option. If you look at our record, for instance, you're going to find on the transcript on pages 844 through 858, for instance, that 99% of all the officers in L.A. have been testified to dress and don and doff at the station. They supply the facilities for them to do it, so they encourage them to do it. But do they require that? I think that's the critical distinction, whether or not the officers are required to don and doff at the job location. And I beg to differ with that, because if we say that if we make that a requirement of whether it's going to be compensable, then we're making new law. But to me, that seems to be the critical fact in Steiner and progeny of those cases, that the people were required, employees were required to don and doff at the premises, and, in fact, they were prohibited from doing it elsewhere. So, to me, that was a critical distinction. Well, all of them were required to don and doff there, but the courts never made that a requirement to make it compensable, if you're reading those cases carefully. They just used it as a factor. Because what are the three factors in determining whether donning, doffing, or these preliminary activities are compensable? Are they controlled or required by the employer? By the representative of the employer, nobody can argue that. But is the activity of donning and doffing necessary to the principle work of being a law? Those are the requirements of compensability. But we have to glean from the precedent, you know, what the courts are telling us in the precedent. And so those are generally the principles or the overarching principles that we look to. But then we also have to look to the rulings of the courts to see, in fact, what they held in conjunction with those principles. And I agree with Your Honor in the sense that all these courts, the Alvarez, Polaris, Steiner, they all talked about the fact that they did get dressed at the plant. But if you look, for instance, at Steiner, at the legislative history again, you're going to find the type of things they talked about, like sharpening and preparing, sharpening tools, preparing tools. For instance, which was the Alvarez case, the meat processing case. What if they did that at home? What if they were allowed to do that at home, sharpen their tools for their functions at work, would they just not have to be paid? Because their employer at Alvarez said, you can do it at home, versus making a requirement to do it. That's a whole different case at that point. Yes, it is. That's a whole different case. And you receded your time, so if you could wrap up quickly. Okay, I'll wrap up. Because one of the other things that's going to come up real quick is going to be the continuous workday rule. And I'm going to point to you at Alvarez where I think, because one of the other arguments is going to be that, well, if we allow officers to dine at home, they're going to have to commute time in. And I think Alvarez takes care of that. Because in Alvarez they said, the district court properly agrees that the workday prevents the performance of voluntary activity that was integral in the success of the work. And the district court also properly determined that the activity occurring thereafter, and here's the key language, in the scope and course of employment was compensated. And I think that's going to be one of the other things that's going to come up. All right. We understand your argument. Thank you, counsel. Thank you, Judge. Counsel, let me just quote. I think this is a quotation from the Littlejones case. And it indicates the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. That's language. Doesn't that address the issue? If it was critical and necessary. Was it critical and necessary? Well, Your Honor, I think there's a bit of a question as to whether it was critical and necessary in the underlying judgment. From our standpoint, it's not really clear how the extent to which it was critical and necessary for the courts to reach the issue of the compensability and compensation. Well. Counsel, let's just go on with the question. If we were to rule that it was not necessary, as we see collateral, wouldn't that both require dismissal of your appeal, but also wouldn't that bind the other district courts that have cases pending? Yes, I believe it would, Your Honor. Now, I'm reading again from the language of the Littlejones case, and the determination of the issue of prior litigation must have been proven critical and necessary. I said that. It goes on to say, and I think this is from the case, the district court concluded, notwithstanding the above findings, donning and doffing of protective gear are not compensable and not de minimis. The court rules that plaintiffs have failed to prove any violation of the LFL essay because the plaintiff failed to put forth sufficient evidence demonstrating he worked above the 171 hours for deployment period threshold. Doesn't that suggest that that decision addressed the issues that were important to that determination?  Again, I think that leaves it somewhat unclear as to how necessary it was for the safety gear to be decided. We understand your argument. Are there any other questions? It appears not. All right. Thank you to both counsel. The case, as argued, is submitted for decision by the court.
judges: Gould, Rawlinson, George